## STATE v. GERALD ZOFF.[1]

February 7, 1936.

No. 30,592.

*A. M. Cary* and *Donald B. Smith,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *Howard T. Van Lear,* Assistant County Attorney, for the State.

[1]Reported in 265 N. W. 34.

DEVANEY, CHIEF JUSTICE.

Information filed against defendant, Gerald Zoff, charging him with the crime of burglary in the third degree.

On November 17, 1934, at an early hour in the morning, or in the late hours of the evening of November 16, the premises occupied by the Winston & Newell Company of Minneapolis were burglarized. The burglary was discovered early on the morning of November 17.

On the morning of November 19 police officers surrounded and entered certain premises at 1869 Iglehart avenue, St. Paul, the residence of the defendant. The defendant had been in bed but got up and was on the sleeping porch or sunroom which adjoins the bedroom when the officers came up to his room. Defendant did not attempt flight, although his brother Elmer, who lived in the same house, did. After dressing, defendant, accompanied by two of the officers, went downstairs, and one of them, officer Carlson, asked defendant for the key to the garage. Still accompanied by the officers, defendant returned to his room, where he took the key from the dresser. They then went to the garage and defendant opened the door. Inside were found certain cartons of cigarettes which were identified as the ones which had been stolen. When asked by the officers where these cigarettes came from, defendant said nothing.

On the basis of the foregoing facts, which comprise the state's entire case against him, defendant was jointly charged with Walter Zoff, his father, and Elmer Zoff, his brother, both also residents of the same premises, with the crime of burglary in the third degree. Defendant demanded and was granted a separate trial, and after his plea of not guilty the case came to trial in March, 1935. The jury found him guilty as charged in the information. From an order denying his motion for a new trial, defendant prosecutes this appeal.

But a single narrow question is presented: Do the foregoing facts show a possession of the stolen goods of such character as would raise an inference of guilt sufficient to justify a jury in finding defendant guilty of the burglary?

It appears to be well settled law that possession of stolen property is a circumstance from which guilt may be inferred. Under-

hill, Criminal Evidence (4. ed.) § 628. This court has so stated. State v. Hoshaw, 89 Minn. 307, 94 N. W. 873. However, before such an inference of guilt arises, the character of possession must, among other things, be personal and exclusive in the parties to the crime. Underhill, Criminal Evidence (4 ed.) § 628. Assuming, as is contended by the state, that possession of the key to the garage wherein the goods were found was possession of the stolen goods, nevertheless we do not believe the goods were in the exclusive possession of the defendant. There is clear and uncontroverted evidence establishing the fact that this house was occupied by several other people, Walter Zoff, Elmer Zoff, Jack Simos, Vernon Zoff, and Mrs. Zoff, the mother of the defendant. In fact, testimony to this effect was given by one of the officers who testified on behalf of the state. It is also uncontroverted in the record that Elmer Zoff shared with defendant the room in which the key to the garage was lying on the dresser, and that Elmer owned and operated the only automobile in the family and kept it in a vacant lot next door. There is some testimony that the garage was rented. There is no evidence that the defendant ever used the garage. It was not within the province of the jury to disregard this undisputed evidence. It showed that even though defendant had possession and control of the garage and the key thereto, at least Elmer Zoff likewise had such possession and control; and the likelihood that other members of the household also had access to this key and to the garage was not excluded.

It is the contention of the state that the defendant kept the key in a hiding place on the dresser. Officer Carlson, who accompanied the defendant up to his room to get the key, stated: "He moved something on the dresser and took it; I believe the key was underneath probably a small box or something that he moved to get the key." At best, this testimony is vague, uncertain, and hazy, and certainly does not exclude the probability that defendant's brother who shared the same room had possession of and access to the key as well as the defendant.

The state contends, however, that defendant had exclusive possession regardless of whether Elmer Zoff or others also had access to the key and to the garage, that possession of stolen property is

personal and exclusive if it is exclusive as to all parties, *participes criminis*. Undoubtedly if all parties who had access to this key and to the garage were *participes criminis*, the possession of any one of them or all of them would satisfy the requirement of exclusiveness. State v. Stutches, 163 Iowa, 4, 144 N. W. 597; State v. Wright, 22 Del. 251, 66 A. 364. But in this record there is no evidence whatsoever that these parties or any of them were jointly concerned in the burglary. Therefore it is necessary to consider this case as if the persons other than defendant to whom the key and the garage were available were in no way connected with the crime. The fact that the defendant was at first jointly charged with his brother, Elmer Zoff, and his father, Walter Zoff, obviously is insufficient to bring them within this rule.

In State v. Castor, 93 Mo. 242, 5 S. W. 906, a situation much like the one in the instant case was presented. Defendant was indicted for larceny when certain stolen articles were found in his trunk which he kept in his room. It appeared that this trunk was sometimes locked and sometimes unlocked and was accessible to others living in the house. Defendant was convicted, and on appeal the judgment was reversed on the ground that the defendant's possession was not exclusive and therefore the presumption as to guilt did not apply.

In another case, Shropshire v. State, 69 Ga. 273, where defendant was convicted of burglary when stolen goods were found under his bed in a room occupied by others, the judgment was reversed on similar grounds. The court said [69 Ga. 276]:

"That goods found in a room occupied by two, or three, or more persons, is not *conclusive* evidence that they were in the possession of any one of them is, we think, a correct legal principle. It would certainly be a very stringent rule to put upon parties, to say that the mere fact that goods were found in a room occupied by several, was *conclusive* evidence that they were in the possession of any particular one of the occupants."

Again, in State v. Perry, 165 Iowa, 215, 145 N. W. 56, 58, the Iowa court in upholding a conviction based partly on the finding of

stolen goods in the possession of the defendant, clearly distinguished the situation where others occupying the same household would also have control over the goods. The court said [165 Iowa, 218]:

"A finding of some of the goods at McBee's house would not be sufficient, of course, to convict the defendant; for other persons than he were the rightful occupants thereof, and had as much, if not more, control thereof as did the defendant. But defendant was the sole and exclusive owner of the wagon, and held the key to the padlock by which the only door to the wagon was opened. It was his wagon, and he not only supplied it with a lock, so that nobody but himself could enter, but personally carried the key to the wagon."

It appears from the foregoing that the possession of the defendant, Gerald Zoff, in the instant case does not meet the requirement of exclusiveness and that therefore it does not justify an inference that he was guilty of the burglary of which he was convicted. There is no other evidence in this record tending to connect defendant with this crime; and, as the evidence as a whole is insufficient to sustain a verdict of guilty, defendant should have been granted a new trial on his motion therefor. The order of the trial court must be reversed.

So ordered.